MARC DEVELOPMENT, INC., an Illinois corporation, and Keith–Marc Properties, Ltd., and Illinois limited partnership, Plaintiffs,

v.

The FEDERAL DEPOSIT INSURANCE CORP., as Receiver for The Cosmopolitan National Bank of Chicago, Defendant.

No. 91–C–619A.

United States District Court, D. Utah, C.D.

Aug. 15, 1991.

Rodney G. Snow, Neil A. Kaplan, Ted Boyer, Clyde, Pratt & Snow, Salt Lake City, Utah, for plaintiffs.

James W. Stewart, Jerome Romero, Jones, Waldo, Holbrook & McDonough, Salt Lake City, Utah, for defendant.

## ORDER DENYING STAY

ALDON J. ANDERSON, Senior District Judge.

The above captioned case is now before the court on Defendant Federal Deposit Insurance Corporation's ("FDIC") motion for a stay of these proceedings. The court has received the briefs of the parties, the responses to the court's letter requesting further information, and the arguments of the parties at the hearing. Having reviewed these submissions and the relevant law, the court is prepared to rule.

Plaintiffs instituted this action on April 19, 1991, in state court to enforce certain loan agreements and to obtain clear title to the property securing those loans. Plaintiffs allege that they entered loan agreements with the Cosmopolitan Bank of Chicago (the "Bank") and provided first deeds of trust as security. Plaintiffs further claim they have paid the loan obligations in full and are entitled to reconveyance of the land.

The original defendant in this lawsuit was the Bank. On May 17, 1991, subsequent to the commencement of this suit,[1] the FDIC became the receiver for the Bank pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"). FDIC then removed the case to this court from state court. FDIC now seeks to stay these proceedings for 180 days[2] because, FDIC argues, this court is without subject matter jurisdiction for that period of time under 12 U.S.C. § 1821(d)(13)(D) as amended by FIRREA.

---

1. As is explained *infra,* the crucial fact in deciding the current motion is whether the appointment of the receiver preceded the present lawsuit or vice versa.

2. In FDIC's briefs it sought a stay of indefinite duration to permit the completion of the decision-making process established in FIRREA. At the hearing, FDIC's counsel altered his request to seek a fixed 180 day stay to accommodate the same process. As is discussed *infra,* this change undermined the logic of FDIC's argument.

Motion for Stay at Docket No. 2 ¶ 7. Plaintiffs counter by asserting that FIRREA expressly provides FDIC with a 90 day stay under 12 U.S.C. § 1821(d)(12)(A)(ii) and that FIRREA does not provide any additional implied stay of greater length.

FDIC bases its request for a stay on subsection 1821(d)(13)(D) as amended by FIRREA which limits the court's subject matter jurisdiction. FDIC asserts this jurisdictional limit deprives the court of jurisdiction in this case for 180 days and thereby entitles it to a stay of these proceedings. An apparent inconsistency in FDIC's request is that if the court has no subject matter jurisdiction, as FDIC initially asserts, the court cannot stay these proceedings but must dismiss them. The FDIC, however, appears to use the term "jurisdiction" in a less technical and more practical sense. Under the FDIC position, the court would retain technical subject matter jurisdiction in that the file would remain open. The court would, however, lose practical "jurisdiction" in that it would be powerless to proceed until the administrative processes were completed.

Stated in another form, FDIC asserts that the statutory provision denying the court "jurisdiction" over the case should not be read literally in the current context. The section should be read to simply provide a stay for 180 days representing the duration of the administrative procedures established by FIRREA. The FDIC's position finds some support in the language of FIRREA and case precedent. *See Tuxedo Beach Club Corp. v. City Federal Savings Bank*, 737 F.Supp. 18 (D.N.J.1990) (district court implied a 180 day stay from the purpose and language of the statute). In essence, the position adopted by the *Tuxedo Beach* court finds that inconsistencies and possible oversights exist in the language of FIRREA. Here, FDIC asserts that poor and inartful drafting led to the apparently incongruous language in the statute. The

*Tuxedo Beach* opinion turned to legislative history to resolve the perceived difficulties with the statute.

This court appreciates the guidance provided by the *Tuxedo Beach* opinion. This court, however, must decide the case before it based on the issues and arguments as formed by the present counsel. Based on the arguments made to the court, this court finds that FDIC's starting premise is incorrect. The relevant FIRREA provisions are not inconsistent nor erroneous. Since FDIC's position in this case is apparently a matter of policy in some FDIC offices,[3] the court first examines the interpretation of FIRREA as proposed by FDIC. In the second part of this opinion the court explains the court's understanding of the statute.

Before delving into the specific provisions of FIRREA and their interpretation, some basic principles of statutory construction should be reviewed. First, the starting point of any statutory interpretation is the language of the statute. *See Donovan v. Southern California Gas Co.*, 715 F.2d 1405, 1407 (9th Cir.1983). The court's object, however, is always to give effect to the intent of Congress as expressed through the statute. *See United States v. DiSantillo*, 615 F.2d 128, 134 (3rd Cir.1980). The cardinal rule in statutory construction is that the statute should be read so as to give meaning to every provision and phrase. *See In re Borba*, 736 F.2d 1317, 1320 (9th Cir.1984). Courts must avoid an interpretation that renders any part of the statute superfluous, erroneous, or fails to give effect to the words chosen by Congress. *See Beisler v. C.I.R.*, 814 F.2d 1304, 1307 (9th Cir.1987). A court, however, is not bound by the plain meaning of the statute if such would thwart the obvious purpose of the statute. *See Suburban Transit Corp. v. I.C.C.*, 784 F.2d 1129, 1130 (D.C.Cir.1986). The court

---

**3.** At the hearing, FDIC's counsel represented that the policy of the Chicago office is to seek an implied 180 day stay in all cases where FDIC is a defendant. Plaintiffs' counsel represented that the policy of the Denver FDIC office is to seek only the 90 day stay expressly provided in FIRREA. FDIC's counsel stated that he was unaware of the policy of any office other than Chicago. According to FDIC's counsel, the Chicago office seeks the 90 day stay for those cases in which FDIC is a plaintiff.

has examined FDIC's assertions under the guidance of these principles.

## A. FDIC'S PROPOSED INTERPRETATION OF FIRREA

■ FDIC cites 12 U.S.C. § 1821(d)(13)(D)[4] as the primary basis for an administrative claims processing stay and as the provision in need of liberal judicial interpretation. Paragraph (d)(13)(D) states:

**(D) Limitation on judicial review**

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver....

12 U.S.C. § 1821(d)(13)(D) (1984). The meaning of this paragraph is clear, the court has no *jurisdiction* to hear the type of claim presented *except* as otherwise provided. In this case, however, FDIC in effect asks this court to rewrite this "jurisdiction" limit so as to provide a 180 day stay. FDIC would read this paragraph, without regard to some other provisions of FIRREA, to state that this court should stay all proceedings in a qualifying lawsuit for 180 days, if the FDIC so requests, for the purpose of permitting the FDIC to pursue its administrative decision-making process.

The court is not persuaded by the logic of FDIC's interpretation of the statute. The logic of FDIC's position as presented by counsel fails upon a closer examination of the express language of the statute.

FDIC's position is contradictory to the language and spirit of other paragraphs in subsection (d).

An initial observation is that the stay as defined by FDIC is insufficient to accomplish the purpose for which FDIC proposes it. FDIC asserts the 180 day stay is necessary to permit FDIC to follow the decision-making process outlined in subsection (d). The 180 day length derives from 12 U.S.C. § 1821(d)(5)(A)(i) which provides that FDIC has only 180 days from the filing of any administrative claim with it in which to allow or disallow a claim. This 180 day period has not begun to run in the present case. No claim has yet been filed nor has FDIC established a deadline for the filing of such a claim as required under FIRREA. *See* description of claims process *infra*. At the end of the requested 180 day stay, therefore, a decision would not yet be due from FDIC. The purpose of the stay would probably not be fulfilled but the stay would still expire.

Additionally, a 180 day stay does not accommodate the time period for FDIC decision-making contemplated by FIRREA and likely to be necessary in most cases. FDIC must first publish notice that provides a window of not less than 90 days during which claimants can file administrative claims. 12 U.S.C. § 1821(d)(3)(B).[5] Once the claim is filed, FDIC has 180 days in which to make a decision. Once the 180 day period has run or the claimant receives notice of disallowance, the claimant has 60 days in which to file, or continue a previously filed, action in district court if the claimant so chooses. 12 U.S.C. § 1821(d)(6)(A). Therefore, subsection (d) provides approximately 330 days[6] for the completion of the decision-making process.

---

4. For the benefit of the reader unfamiliar with the issues presented in this case, the court notes that all the relevant sections discussed are in subsection (d) of 12 U.S.C. § 1821. Subsection (d) governs FDIC powers and procedures when the FDIC serves as receiver or conservator. *See* 12 U.S.C. § 1821(d) (1989).

5. In this case, FDIC has not yet published this notice though it was required to do so "promptly" after it was appointed in May of this year. *See* 12 U.S.C. § 1821(d)(3)(B). No deadline, therefore, has been established for the filing of

claims. Under these circumstances, the court can determine no fixed time period within which the FDIC administrative decision-making process will be completed. This is why FDIC's original request for a stay of indefinite duration better supported FDIC's reasoning.

6. This figure includes 90 days minimum notice pursuant to § 1821(d)(3)(B), 180 days maximum decision time pursuant to § 1821(d)(5)(A)(i), and 60 days statute of limitations pursuant to § 1821(d)(6)(A).

*See* Figure. [See Appendix.] Though a stay need not last the full 330 days, a stay of 180 days is patently inadequate for a case where no claim has been filed with the FDIC and the time limit for filing claims has not even begun to run.

The implied stay proposed by FDIC is also inconsistent with the spirit and effect of the stay that is expressly provided in subsection (d). Paragraph (d)(12)(A)(ii) grants the FDIC as receiver a 90 day stay in any judicial action or proceeding. Why would Congress expressly grant only a 90 day stay if Congress intended that proceedings be stayed for 180 days during the FDIC's decision making? Or, to pose the question in the phrasing of FDIC, why grant a 90 day stay if the court is without "jurisdiction" to act while the FDIC makes a decision? The purpose of the 90 day stay is concisely expressed in the legislative history. The 90 day stay is intended to provide FDIC with a breathing space to analyze a case into which it is placed as a party upon being appointed as a receiver. H.R.Rep. No. 54, 101st Cong., 1st Sess. 331, *reprinted in* 1989 U.S.Code Cong. & Admin.News 86, 127. Such a delay is unnecessary and cumulative if the FDIC also has the benefit of an implied stay during its decision-making process which would normally start upon being appointed receiver. To interpret the statute as suggested by FDIC would make the 90 day stay provision essentially superfluous.

Finally, and most significantly, FDIC's interpretation contradicts paragraph (d)(5)(F). That paragraph states, "[s]ubject to paragraph (12) [the 90 day stay provision], the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver." 12 U.S.C. § 1821(d)(5)(F)(ii). Counsel for FDIC argues that the paragraph is correct but essentially meaningless. Counsel explained that the filing of a claim with the receiver does not prejudice any right to pursue an action in court because a claimant has no right to pursue such an action once FDIC is appointed a receiver under the jurisdiction limitation. Such logic is not persuasive to the court.

## B. THE COURT'S INTERPRETATION OF FIRREA

The court finds that FDIC's emphasis on the jurisdiction limit found in paragraph (d)(13)(D) is misplaced. The jurisdiction provision does not directly address a case such as that now presented in which the lawsuit was filed prior to the appointment of FDIC as receiver. The primary focus of the jurisdiction limit can be gleaned from the title of the paragraph. Congress entitled the paragraph "Limitation on judicial review." 12 U.S.C. § 1821(d)(13)(D). The court is persuaded that Congress intended paragraph (d)(13)(D) to emphasize that the statute insulates FDIC from judicial review of its actions as either receiver or administrative claims processor. *See generally* H.R.Rep. No. 54, 101st Cong., 1st Sess. 334, 419, *reprinted in* 1989 U.S.Code Cong. & Admin.News 86, 130, 215 (discussing unavailability of judicial review of agency actions). FIRREA provides that if a claimant is dissatisfied with the administrative ruling on its claim, the claimant may not seek review of the administrative procedures or of the administrative decision but is entitled to a de novo trial of its original claim. *See* H.R.Rep. No. 54, 101st Cong., 1st Sess. 334, 418, *reprinted in* 1989 U.S.Code Cong. & Admin.News 86, 130, 214; 12 U.S.C. §§ 1821(d)(5)(E), 1821(d)(6)(A). To ensure that FDIC is permitted to perform this claims "screening" process on all claims precipitated by the receivership, paragraph (d)(13)(D)'s jurisdiction limit requires that the claimant complete the administrative process before a court may obtain subject matter jurisdiction to hear a lawsuit based on the claim. *See generally* H.R.Rep. No. 54, 101st Cong., 1st Sess. 418–19, *reprinted in* 1989 U.S.Code Cong. & Admin.News 86, 214–15 (discussing validity of imposing jurisdictional prerequisite of pursuing administrative claims process).

The jurisdiction limit does not, however, apply to every lawsuit in which FDIC is a party as a receiver. Paragraph (d)(5)(F)(ii) provides the key to deciding the present case and understanding the scope

of the jurisdiction limit in paragraph (d)(13)(D). As previously noted, paragraph (d)(5)(F)(ii) preserves the rights of a claimant that filed a lawsuit prior to the appointment of FDIC as receiver. *See* 12 U.S.C. § 1821(d)(5)(F)(ii). Specifically, the paragraph states that the filing of a claim with FDIC does not prejudice the claimant's right to pursue a lawsuit filed prior to the receivership. 12 U.S.C. § 1821(d)(5)(F)(ii). This guarantee of preexisting rights is subject only to a right created for the FDIC to seek a 90 day stay. *Id.* If the court adopted the interpretation of subsection (d) proposed by FDIC, this paragraph would be meaningless. The court reads this guarantee of rights paragraph to contemplate a duality of remedies available to the claimant that has a lawsuit existing when FDIC is appointed as receiver. A claimant with a lawsuit filed prior to the receivership is entitled to pursue that cause in court simultaneously with the administrative claims process. If, as FDIC asserts, the proceedings in the lawsuit must pause during the potentially 330 day long administrative procedures, the Congress would not guarantee rights to pursue a lawsuit on the filing of a claim in the administrative process and provide for a 90 day stay during those administrative procedures.

This repetition of available remedies is consistent with other provisions in subsection (d). In the standard situation, the claimant must file an administrative claim first. Upon completion of the administrative decision process, the claimant has the right to start all over again in the district court unhindered by a disallowance of the administrative claim. *See* 12 U.S.C. § 1821(d)(6). Subsection (d) routinely provides two remedies to a claimant. *See* H.R.Rep. No. 54, 101st Cong., 1st Sess. 334, 418, *reprinted in* 1989 U.S.Code Cong. & Admin.News 86, 130, 214. Permitting a conscientious claimant, who has previously acted to preserve his or her right, to pursue both avenues of redress does not seem inconsistent with the spirit of subsection (d).

As noted, paragraph (d)(5)(F)(ii) provides that no prejudice befalls a litigant who also files an administrative claim with FDIC.

The "no prejudice" language of paragraph (d)(5)(F)(ii) draws the distinction that permits all the provisions of subsection (d) to function together harmoniously. A lawsuit filed *before* the appointment of FDIC as receiver is therefore subject to different rules than a lawsuit filed *after* appointment. A lawsuit filed before the receivership follows an essentially normal course while the FDIC's claims processing mechanism proceeds simultaneously.

Paragraph (d)(13)(D) states that no court shall have jurisdiction except as otherwise provided in subsection (d). *See* 12 U.S.C. § 1821(d)(13)(D). This leaves only two routes by which a claimant can pursue an action in court. First, for a post receivership lawsuit, the statute permits a claimant to file a suit within 60 days after the FDIC allows or disallows a claim filed with it. *See* 12 U.S.C.A. § 1821(d)(6). Second, paragraph (d)(5)(F)(ii) contemplates that lawsuits predating the receivership are intended to continue without prejudice except for the optional 90 day stay provided by paragraph (d)(12). This interpretation, reading subsection (d) to permit preexisting lawsuits to proceed without prejudice, gives effect to the stay paragraph and accomplishes the paragraph's purpose as explained by Congress, unlike the FDIC proposal. Congress intended the 90 day stay to give the FDIC a delay to acquaint itself with a lawsuit to which it abruptly becomes a party upon appointment as receiver. The stay grants FDIC an opportunity to familiarize itself with the suit and decide on a course of action without materially inconveniencing the other parties.

This interpretation of the scope of the jurisdiction limit also permits that limitation to be consistent with the language of paragraph (d)(6)(A). Paragraph (d)(6)(A) states, after FDIC's claims screening process is complete, a claimant has the option to "continue" a lawsuit filed prior to appointment of the receiver. 12 U.S.C. § 1821(d)(6)(A). The term "continue" implies that a party is proceeding forward in an ongoing case without an interruption in the court's jurisdiction. A claimant could not "continue" an action over which the

court had been deprived of subject matter jurisdiction. The claimant would have to "refile" such a lawsuit because the suit would have been dismissed due to lack of subject matter jurisdiction.

The court's interpretation of the scope of the jurisdiction limit also serves the policy of conserving judicial resources. To read the jurisdiction limit as not drawing a distinction between suits filed before and after the receivership would lead to the waste of considerable legal efforts. Conceivably, an action that had been pursued for years and had been submitted for decision to a jury or judge would have to cease immediately upon appointment of the receiver because the court would be without subject matter jurisdiction. The case would then await the completion of an approximately 330 day administrative process. In return for this lengthy delay, the judicial system would receive only an administrative decision from FDIC that does not bind the claimant. In effect, the statute would reach backward to deprive a court of established subject matter jurisdiction to permit the issuance of an advisory opinion by one of the parties. Surely if Congress intended this result, it would have clearly stated so in the statute or the legislative reports. The court is aware of no such expressions.

Furthermore, the court's reading of FIRREA respects the traditional principles of priority. When all other factors are equal, the courts grant a priority to the first lawsuit filed. Consolidation, involuntary joinder, and even issue and claim preclusion are all recognitions of the priority given the first suit filed. FDIC's interpretation would ignore this priority principle.

■ For these reasons, the court concludes that under FIRREA, lawsuits that predate the appointment of the FDIC as receiver may proceed without interruption subject only to the 90 day stay of § 1821(d)(12)(A)(ii). The limitation on jurisdiction found in 12 U.S.C. § 1821(d)(13)(D) does not imply the existence of a stay of a preexisting lawsuit. FDIC's motion for a stay due to the court's lack of subject matter jurisdiction is, therefore, DENIED.

The court does not grant FDIC alternative relief of a 90 day stay under 12 U.S.C. § 1821(d)(12)(A)(ii) because FDIC did not request such relief. At the hearing, the prospect of the 90 day stay as alternative relief was proposed. FDIC's counsel stated expressly that FDIC does not now seek a 90 day stay but probably will in the future if the 180 day stay is denied. Therefore, the court will not rule on the 90 day stay since FDIC chooses not to place it before the court at this time. The court notes, however, that the purpose of the 90 day stay is well documented in the legislative history. *See* citations *supra*. Additionally, precedent exists for denial or modification of the 90 day stay where it would not serve its intended purpose and would harm the other party. *See Hunter's Run v. Arapahoe County Public Trustee,* 741 F.Supp. 207 (D.Colo.1990). The court wonders what legitimate purpose is sought by a party seeking a 180 day stay that refuses to accept or request a 90 day stay to which it is probably entitled until after the court completes its decision-making process.

IT IS SO ORDERED.

# APPENDIX

### Applicable Time Limits Under FIRREA
### Where Lawsuit Not Filed Prior To Receivership

FDIC Must File Notice
"Promptly" After
Appointment. ¶ (d)(3)(B)(i)

90 Day Minnimum Notice
Period For Filing Claims
With FDIC. ¶ (d)(3)(B)(i)

180 Day Period Within Which FDIC Must Allow
Or Disallow Claim Filed. Period Runs From Date
Claim Is Filed. ¶ (d)(5)(A)(i)

60 Day Statute Of
Limitations For Filing
Lawsuit On Original Claim.
¶ (d)(6)(A)

Lawsuit Commences
Within 60 Days Of
Disallowance.

If a lawsuit predated the receivership, the above timeline would proceed simultaneously with a standard litigation timeline. The only difference would be the addition in the lawsuit of an optional 90 day stay provided to FDIC by FIRREA Under ¶ (d)(12)(A)(ii).

