In re Audrey WICKMAN, Debtor.

Audrey WICKMAN, Plaintiff,

v.

RESOLUTION TRUST CORPORATION successor in interest to New England FSB Lawrence Sumski, Trustee, Defendant.

Bankruptcy No. 90–12338.
Adv. No. 91–1068.

United States Bankruptcy Court,
D. New Hampshire,

April 5, 1994.

Richard D. Craven, Nashua, NH, J. Ronald Fishbeih, Providence, RI, for Audrey A. Wickman.

Jon Meyer, Backus, Meyer & Solomon, Manchester, NH, for Resolution Trust Corp.

Jon Meyer, Steven A. Solomon, Backus, Meyer & Solomon, Manchester, NH, for New England Federal Sav. Bank.

Audrey A. Wickman, pro se.

Larry Sumski, Amherst, NH, Trustee.

Gerri Karonis, Manchester, NH, for U.S. trustee.

## MEMORANDUM OPINION AND ORDER

JAMES E. YACOS, Bankruptcy Judge.

This adversary proceeding came on for hearing on March 22, 1994 on debtor's Motion to Reconsider this Court's Order of March 4, 1994 (Ct.Doc.No. 36) to the extent the Order directed the plaintiff to take a voluntary nonsuit in its action filed in the District Court of Massachusetts if it intended to proceed in this Court.

As a matter of procedural history, this lender liability action was commenced on May 1, 1991 in the bankruptcy court which retained jurisdiction over the matter as a core proceeding under 28 U.S.C. § 157(b)(2).

The case was tried in its entirety and taken under advisement on June 26, 1992. Shortly thereafter, the Resolution Trust Corporation (hereinafter the "RTC") was appointed the receiver of New England Federal Savings Bank and was substituted as the defendant in the proceeding. Upon motion of the RTC, on October 2, 1993, this Court entered an Order staying the proceeding until the plaintiff exhausted the administrative claims procedure as required under the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (hereinafter "FIRREA"), 12 U.S.C. § 1821(d). (Ct.Doc.No. 31).

On December 28, 1993, following the exhaustion of the administrative remedies before the RTC, the plaintiff filed a motion alerting the Court that the claim had been disallowed by the RTC and asked the Court to recommence its determination of the issues. On March 1, 1994, the Court determined "the present adversary proceeding can and should now be recommenced" and that "the District Court action filed in Massachusetts is surplusage and the plaintiff will take a voluntary nonsuit in that action." (Ct.Doc. No. 36) The plaintiff filed a Motion to Reconsider the portion of the Order that demanded the withdrawal of the Massachusetts lawsuit.

The controlling provision of the FIRREA statute states:

(A) Before the end of the 60–day period beginning on the earlier of—

(i) the end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the Corporation is receiver; or

(ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i), the claimant may . . . file suit on such claim (*or continue an action commenced before the appointment of the receiver*) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).

12 U.S.C. § 1821(d)(6)(A) (Supp.1993) (emphasis provided).

The catalyst of the plaintiff's motion is the crystalline ambiguity in the language of the FIRREA statute[1]. The plaintiff contends that the language of the statute suggests that the pending lawsuit which was stayed during the exhaustion of the administrative claims process, may be continued but may be heard *only* before the territorial court of the institution's principal place of business or in the District Court for the District of Columbia. This interpretation of the provision would effectively divest the Bankruptcy Court of its subject matter jurisdiction over the matter. The plaintiff suggests that the bankruptcy court await the response of the district court to a pending motion in the district court to (a) "lift" the FIRREA stay on the judicial proceedings after the exhaustion of the administrative claims process and (b) confer jurisdiction on the New Hampshire Bankruptcy Court to continue proceedings commenced prior to involvement of the RTC.

 As an initial matter, the stay imposed on pending judicial proceedings by the FIRREA statute is statutorily lifted at the conclusion of the administrative claims process. Further, the existence of subject matter jurisdiction of this bankruptcy court is a determination to be made by this court and this court only. The plaintiff's suggestion that the bankruptcy court await the determination of its subject matter jurisdiction by the Boston Federal District Court is unjustified and illogical.

> FIRREA's text comprises an almost impenetrable thicket, overgrown with sections, subsections, paragraphs, subparagraphs, clauses, and subclauses—a veritable jungle of linguistic fronds and brambles. In light of its prolixity and lack of coherence, confusion over its proper interpretation is not only unsurprising—it is inevitable.

---

**1.** The inherent ambiguities of the FIRREA statute are frequently the focus of judicial opinions. *See F.D.I.C. v. Grillo*, 788 F.Supp. 641 (D.N.H.1992) (interpreting § 1821(d)(13)(D)); *Vinton v. Trustbank Sav., F.S.B.*, 798 F.Supp. 1055 (D.Del.1992) (interpreting § 1821(d)(6)(A)); *Marc Development, Inc. v. F.D.I.C.*, 771 F.Supp. 1163 (D.Utah 1991) (interpreting § 1821(d)(13)(D)).

Perhaps Judge Selya summarized the statute best in *Marquis v. F.D.I.C.*, 965 F.2d 1148 (1st Cir.1992) by stating:

Secondly, having reviewed the statutory language of FIRREA and the interpretative case law, I find that this court properly obtained subject matter jurisdiction over this matter prior to the RTC's involvement in the case, continued to have subject matter jurisdiction after the RTC's involvement, and currently retains subject matter jurisdiction after exhaustion of the administrative claims process. Following the reasoning and logic underlying the Court's interpretation of § 1821(d)(13) in *Marquis v. F.D.I.C.*, 965 F.2d 1148 (1st Cir.1992), I do not believe the parenthetical phrase of § 1821(d)(6)(A), read in the context of the other sections of the law, can be interpreted to extinguish the properly established jurisdiction of the bankruptcy court over a cause of action filed and tried to its evidentiary completion prior to the take-over of the defendant bank by the RTC.

In *Marquis,* interpreting § 1821(d)(13)(D), the Court held that the federal court retained subject matter jurisdiction over a pre-existing lawsuit during the pendency of the administrative claims process. In that case, the FDIC contended that, under FIRREA, once a FDIC receivership commenced, the federal court did not have jurisdiction over a claim until after the administrative claims process was complete. •Thus, actions pending at the time the FDIC receivership commenced must be dismissed and only until after the claims review process was complete may a new action may be filed. The Court disagreed.

Reviewing the statute as a whole, the Court found that the FDIC's interpretation of the § 1821(d)(13)(D) was inconsistent with other sections of the statute. In particular, the Court focused on the provisions which outlined the imposition of the 90–day stay on judicial proceedings under § 1821(d)(12)(A) stating:

"The single sentence which is most difficult to harmonize with the FDIC's reading of the statute is the provision which states that, subject to the 90–day stay described elsewhere in the statute, *see* 12 U.S.C. § 1821(d)(12)(A), 'the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of a receiver.' 12 U.S.C. § 1821(d)(5)(F)(ii).

What could be more prejudicial to a claimant's right 'to continue' a pending action than an outright dismissal of the action?" *Marquis,* 965 F.2d at 1153. In other words, reading the section in context of other parts of the statute and in the background of the purpose of the legislation, common sense dictated an interpretation of the language of § 1821(d)(13)(D) to allow the federal court to retain subject matter jurisdiction over actions pending against failed financial institutions after the FDIC had been appointed receiver and through the conclusion of the administrative claim review process.

In making this finding the *Marquis* court implicitly ruled that the pre-existing lawsuit may continue where it was begun once the administrative claims process is complete. In discussing the policy behind the statute and the stay provisions of the statute, the *Marquis* court stated:

"It is difficult to conceive of anything less efficient than dismissing a suit that has been say, two years in process, only to have an identical suit started afresh some six months later. By staying all proceedings in a pending action until the administrative claims process has run its course, efficacy will be promoted. At that point, suits based upon resolved claims can be dismissed outright, whereas suits based upon claims still unresolved can simply be resumed, thereby dispelling the need to retrace steps already completed."
*Id.* at 1154.

Further, the very words of the phrase "or *continue* an action commenced before the appointment of the receiver" imply that the stayed cause of action will proceed in the court it was begun. Logic dictates this result.

"The word 'continue' implies that a party is proceeding forward in an ongoing case without an interruption in the court's jurisdiction. A claimant could not 'continue' an action over which the court had been deprived of subject matter jurisdiction. The claimant would have to 'refile' such a lawsuit because the suit would have been dismissed due to lack of subject matter jurisdiction. . . . In effect, the statue would reach backward to deprive a court of es-

tablished subject matter jurisdiction to permit the issuance of an advisory opinion by one of the parties. Surely if Congress intended this result, it would have clearly stated so in the statute or the legislative reports."

*Marc Dev., Inc. v. FDIC,* 771 F.Supp. 1163 (D.Utah 1991), *cited in Marquis v. FDIC,* 779 F.Supp. 6 (D.N.H.1991), *aff'd,* 965 F.2d 1148 (1st Cir.1992) (construing § 1821(d)(6)(A) as support for interpretation of § 1821(d)(13)(D) to allow retention of federal court jurisdiction during pendency of administrative claims process).

■ In summary, notwithstanding the lack of clarity in meaning of the language of the subsection standing alone, read in context of the other parts of the statute, it is clear that Congress did not intend to extinguish the jurisdiction of the bankruptcy court over a cause of action filed and tried to its evidentiary completion prior to the take-over of the defendant bank by the RTC after the completion of the administrative claims process.

For the foregoing reasons, it is hereby ORDERED, ADJUDGED and DECREED as follows:

1. The Motion to Reconsider is hereby denied.

2. This Court properly retained jurisdiction over this proceeding pre-receivership, continued to have subject matter jurisdiction during the administrative claims resolution process and currently has jurisdiction over the continued matter after the disallowance of the claim by the RTC.

3. The plaintiff shall take a voluntary nonsuit in the parallel cause of action currently pending in the Massachusetts District Court forthwith. Failure to do so will result in the dismissal with prejudice of the present action in this Bankruptcy Court.

4. An Amended Procedural Order entered contemporaneously this date will supercede the deadlines set forth in the Procedural Order dated March 1, 1994.